IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>SPRINGTECH 77376 LLC, et al.<br><br>    Defendants. | No. C -12-04631 PJH (EDL)<br><br>**ORDER VACATING HEARING AND REPORT AND RECOMMENDATION RE: FEDERAL TRADE COMMISSION'S MOTION FOR DEFAULT JUDGMENT** |

Plaintiff Federal Trade Commission's ("FTC") moved for default judgment against Defendants Springtech 77376, LLC, Cedarcide Indus., Inc., and Cedar Oil Tech. Corp. (Dkt. 75). For the reasons set forth below, the Court recommends that the District Court grant Plaintiff's motion and enter its proposed order. Consequently, the Court vacates the hearing set for November 19, 2013.

**I.    Background**

On September 5, 2012, Plaintiff filed a complaint against Springtech 77376, LLC ("Springtech"), Cedarcide Industries, Inc. ("Cedarcide"), Cedar Oil Technologies Corp. ("Cedar Oil"), Chemical Free Solutions, LLC, and Dave Glassel. Defendant Glassel is the owner, president, and director of Springtech, Cedarcide, and Cedar Oil, and he is an owner of Chemical Free Solutions. (Compl. ¶ 11.) The complaint alleges that Defendants violated Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, by advertising, marketing, and selling pest control products that purportedly treat and prevent bed bug and head lice infestations.

According to the complaint, since at least 2007 Defendants manufactured, advertised, and sold a line of pest control products under the "BEST *Yet*!" brand to consumers throughout the United States. Defendants sold BEST *Yet*! products for treating bed bugs and head lice to individual

consumers, business consumers, and school districts.  In advertising these products, Defendants made statements about: (1) the efficacy of BEST *Yet*! in stopping and preventing bed bug infestations; (2) the efficacy of BEST *Yet*! in stopping and preventing head lice infestations and killing head lice and their eggs; (3) scientific studies that purportedly supported Defendants' efficacy claims; and (4) the federal government's affiliation with BEST *Yet*!.  (Compl. ¶¶ 18, 22, 25, 28, 31, and 34.)  Plaintiff alleges that the efficacy statements were not substantiated when made and that the statements about scientific studies and the federal government were false.  The complaint seeks a permanent injunction to prevent Defendants from violating the FTC Act in the future and equitable relief to redress consumer injuries, including recession or reformation of contracts, restitution, refund of monies paid, and disgorgement of ill-gotten monies.

Defendant Chemical Free Solutions executed a waiver of service on October 22, 2012, and Plaintiff served all other defendants on October 25, 2012.  (Dkt. 7; 8.)  Defendants Springtech, Cedarcide, and Cedar Oil have not responded to or otherwise defended against the complaint.  (O'Brien Decl. ¶ 3, Dkt. 29-1; O'Brien Decl. ¶ 3, Dkt. 49-1.)  The Clerk entered default against Defendants Cedarcide and Cedar Oil on December 4, 2012, and against Defendant Springtech on February 15, 2013.  (Dkt. 34; 50.)

On July 18, 2013, the District Court entered stipulated orders for permanent injunctions and monetary judgments against Defendants Glassel and Chemical Free Solutions.  The stipulated injunctions prohibit these Defendants from making certain representations about BEST *Yet*! products and other pesticides and require them, among other things, to keep certain records, submit certain documents to Plaintiff, and comply with Plaintiff's monitoring efforts.  (Dkt. 72; 73.)  Defendants Glassel and Chemical Free Solutions also stipulated to equitable monetary relief in Plaintiff's favor. (Dkt. 73 at 7; Dkt.72 at 5.)

Plaintiff moved for default judgment against Defendants Springtech, Cedarcide, and Cedar Oil (the "Defaulting Defendants") on August 19, 2013, seeking a permanent injunction nearly identical to the one that the District Court entered against Defendants Glassel and Chemical Free Solutions and payment of $7,279,000.00.  Plaintiff also requests entry of final judgment under Federal Rule of Civil Procedure 54(b).

2

## II. Discussion

### A. Jurisdiction

In considering whether to enter default judgment, a court must inquire into its jurisdiction over the subject matter and the parties. Tuli v. Republic of Iraq, 172 F.3d 707, 712 (9th Cir. 1999). Plaintiff has properly pled subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337(a), and 1345, and 29 U.S.C. §§ 45(a) and 53(b). Plaintiff has also properly plead personal jurisdiction; it alleges that Defaulting Defendants transacted business in this district and throughout the United States, and under 15 U.S.C. § 53(b), the FTC may serve process "on any person, partnership, or corporation wherever it may be found."

### B. Default Judgment

As a threshold matter, a court may not enter default judgment against an unrepresented minor, an incompetent person, or a person in military service. See Fed. R. Civ. P. 55(b)(2); 50 U.S.C. App. § 521(b)(1). Plaintiff filed declarations stating that Defaulting Defendants were not minors, incompetent persons, or persons in military service. (O'Brien Decl. ¶ 4, Dkt. 29-1; O'Brien Decl. ¶ 4, Dkt. 49-1.)

In considering the propriety of default judgment, a court looks at: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir.1986).

The Eitel factors weigh in favor of entry of default judgment against Defaulting Defendants. Plaintiff's claims appear to be meritorious and the complaint is sufficient. Plaintiff would also suffer prejudice because without a default judgment it would likely be without a remedy against Defaulting Defendants. See Pepsico, Inc. v. Cal. Security Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Moreover, a dispute regarding material facts is unlikely; Defaulting Defendants have not defended this action, and the proposed default judgment order is similar to the stipulations entered into by Defendants Glassel and Chemical Free Solutions. Although the sum of money at stake,

1  $7,279,000.00, is large, it is proportional to the seriousness of Defendants' conduct because it
2  represents the amount consumers paid for BEST *Yet*! products, minus refunds. Pepsico, 238 F.
3  Supp. 2d at 1176-77 (noting that under this Eitel factor, a court considers the amount of money at
4  stake in relation to the seriousness of the defendants' conduct); FTC v. Stefanchik, 559 F.3d 924,
5  (9th Cir. 2009) (affirming award of over $17 million in equitable monetary relief that represented
6  the amount of loss incurred by consumers). Finally, there is no evidence that Defaulting
7  Defendants' default was due to excusable neglect, and the policy favoring decisions on the merits,
8  standing alone, does not preclude default judgment. Pepsico, 238 F. Supp. 2d at 1177.

      C.    Liability

Plaintiff alleges that Defaulting Defendants' representations about the efficacy of, and scientific studies relating to, bed bugs were unsubstantiated when made and false, respectively, and thus constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). (Compl. ¶¶ 24, 27.) Plaintiff also alleges that Defaulting Defendants' representations about the efficacy of, and scientific studies relating to, head lice were unsubstantiated when made and false, respectively, and thus constitute deceptive acts or practices in violation of Section 5(a) and false advertisements in violation of Section 12 of the FTC Act, 15 U.S.C. § 52. (Id. ¶¶ 30, 33.) Further, Plaintiff alleges that Defaulting Defendants' representations about the federal government were false and, consequently, constitute deceptive acts or practices in violation of Section 5(a). (Id. ¶ 36.)

Section 5(a) of the FTC Act makes unlawful "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a). Section 12 of the FTC Act prohibits the dissemination of "any false advertisement" to induce the purchase of "food, drugs, devices, services, or cosmetics." 15 U.S.C. § 52(a). The dissemination of a false advertisement is also an unfair or deceptive act or practice under Section 5(a). 15 U.S.C. § 52(b). An act, practice, or advertisement is deceptive under Sections 5 and 12 of the FTC Act if there is a material representation, omission, or practice that is likely to mislead consumers acting reasonably under the circumstances. FTC v. Gill, 265 F.3d 944, 950 (9th Cir. 2001) (applying test in Section 5 context); FTC v. Pantron I Corp., 33 F.3d 1088, 1095 (9th Cir.1994) (adopting test in Section 12 context). "In determining whether defendants

4

made a particular representation, the Court may consider the 'net impression' created by the advertisement.'" FTC v. Medlab, Inc., 615 F. Supp. 2d 1068, 1076 (N.D. Cal. 2009). A representation, omission, or practice can mislead consumers if the message conveyed is false or the advertiser lacked a reasonable basis for asserting that the message was true, i.e., the message was unsubstantiated. Pantron I Corp., 33 F.3d at 1096. A misleading representation "is material if it 'involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'" FTC v. Cyberspace.com, LLC, 453 F.3d 1196, 1201 (9th Cir. 2006) (quoting Cliffdale Assocs., 103 F.T.C. 110, 165 (1984)). "Express product claims are presumed to be material . . . ." Pantron I Corp., 33 F.3d at 1095-96.

Defaulting Defendants are deemed to have admitted Plaintiff's factual allegations regarding liability. Fed. R. Civ. P. 8(b)(6); TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir.1987). Plaintiff's complaint alleges that Defaulting Defendants maintained a substantial course of trade in or affecting commerce. (Compl. ¶ 12.) It further alleges that Defaulting Defendants made representations about the efficacy of BEST *Yet*! against bed bug and head lice infestations, scientific proof of these efficacy claims, and federal government agencies' involvement with BEST *Yet*!. (Id. ¶¶ 22, 25, 28, 31, and 34.) The representations are contained in advertisements that Plaintiff cites in the complaint. (Id. ¶ 18.) These representations were either unsubstantiated when made or false. (Id. ¶¶ 23, 26, 29, 32, and 35.) Morever, several of the representations were express representations, and the representations concerning product efficacy were likely to affect consumers' choice of the product. Cliffdale, 103 F.T.C. at 190 (noting that the FTC presumes information pertaining to efficacy is material). Taking these allegations as true, Defaulting Defendants made material, misleading representations that constitute unfair and deceptive acts or practices and false advertising under Sections 5 and 12 of the FTC Act.

D. Relief

1. Injunctive Relief

Plaintiff seeks injunctive relief: (a) requiring Defaulting Defendants to possess competent and reliable scientific evidence before making bed bug efficacy claims regarding BEST *Yet*! or any other pesticide (Part I); (b) requiring Defaulting Defendants to comply with certain Food and Drug

5

**United States District Court**
For the Northern District of California

1  Administration requirements before making head lice efficacy claims regarding BEST *Yet*! or any
2  other drug or pesticide (Part II); (c) prohibiting Defaulting Defendants from misrepresenting that any
3  product, service, or person is affiliated with a government entity or third party organization (Part
4  III); (d) prohibiting Defaulting Defendants from misrepresenting information about scientific studies
5  or research (Part IV); (e) prohibiting Defaulting Defendants from benefitting from customer
6  information that is the fruit of their deceptive scheme and requiring them to destroy such
7  information in their possession (Part V); (f) requiring Defaulting Defendants to acknowledge receipt
8  of the Order and circulate the Order to, and obtain acknowledgment from, others associated with
9  Defaulting Defendants (Part VII); (g) requiring Defaulting Defendants to submit compliance reports
10 and other notices to Plaintiff under penalty of perjury (Part VIII); (h) requiring Defaulting
11 Defendants to maintain relevant records (Part IX); and (i) requiring Defaulting Defendants to
12 comply with Plaintiff's future efforts to monitor compliance with the Order, such as by submitting
13 additional compliance reports and responding to discovery requests (Part X).

14 Section 13(b) of the FTC Act authorizes the FTC to seek a permanent injunction. 15 U.S.C.
15 § 53(b). "This provision gives the federal courts broad authority to fashion appropriate remedies for
16 violations of the Act." Pantron I Corp., 33 F.3d at 1102. Plaintiff's remedies are not limited to
17 BEST *Yet*! products; Congress authorized the FTC "to draft orders encompassing all of an
18 advertiser's products or all products in a broad product category in order to 'fence in' known
19 violators of the [FTC] Act." Sterling Drug v. FTC, 741 F.2d 1146, 1154 (9th Cir. 1984). Upon
20 finding that a defendant has engaged in unfair practices, a court may impose "comprehensive
21 prophylactic injunctive relief." FTC v. Dinamica Financiera LLC, Case No. 09-3554, 2010 U.S.
22 Dist. LEXIS 88000, at *48 (C.D. Cal. Aug. 19, 2010).

23 The scope of the proposed order is appropriate. Defaulting Defendants made deceptive and
24 false representations in a nationwide advertising campaign since at least 2007. The proposed
25 permanent injunction prohibits Defaulting Defendants from engaging in future violations of the FTC
26 Act and protects consumers. It is also nearly identical to the relief previously granted with respect to
27 Defendants Glassel and Chemical Free Solutions.
28

6

2. Monetary Relief

Plaintiff also seeks entry of a judgment against Defaulting Defendants, jointly and severally, for $7,279,000.00 as equitable monetary relief (Part VI). Courts are authorized under the FTC Act to order restitution, including the full amount of a defendant's sales. Stefanchik, 559 F.3d at 931-32 ("Moreover, because the FTC Act is designed to protect consumers from economic injuries, courts have often awarded the full amount lost by consumers rather than limiting damages to a defendant's profits."); Gill, 265 F.3d at 958 ("In the absence of proof of 'actual damages,' the court properly used the amounts consumers paid as the basis for the amount Defendants should be ordered to pay for their wrongdoing.").

Plaintiff bears the burden of proving its entitlement to relief through testimony or declarations. To that end, Plaintiff submitted the declarations of Neil Goldstein, who declares that he has the authority to authenticate sales records, and Kelly Ortiz, an FTC investigator. Goldstein avers that he prepared spreadsheets of Springtech's sales and that Defendant Chemical Free Solutions produced these spreadsheets during discovery. (Goldstein Decl. ¶¶ 1-3, Dkt. 75-1.)[1] These spreadsheets reflect sales that occurred between April 26, 2006 and March 31, 2012. Ortiz used these spreadsheets to analyze the sales of BEST *Yet*! products. (Ortiz Decl. ¶¶ 4-5.) Ortiz calculated that the revenue from the sale of relevant BEST *Yet*! products was $7,279,000.56. (Id. ¶ 6.) In light of this evidence, Plaintiff is entitled to the equitable monetary relief it seeks.

E. Rule 54(b)

Plaintiff also requests that the District Court enter final judgment against Defaulting Defendants under Federal Rule of Civil Procedure 54(b). Rule 54(b) provides that "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." In determining whether entry of judgment under Rule 54(b) is appropriate, a court asks whether one or more claims have been finally resolved, and, if so, whether there is any just reason for delay. Curtiss-Wright Corp. v. Gen.

---

[1] Chemical Free Solutions obtained Springtech's sales records as part of an asset purchase agreement and produced the sales spreadsheets during discovery. (Goldstein Decl. ¶¶ 1-3.)

7

Elec. Corp., 446 U.S. 1, 7-8 (1980). "The function of the district court under the Rule is to act as 'dispatcher,'" and it "must take into account judicial administrative interest as well as the equities involved." Id. at 8. The district court must "preserve the historic federal policy against piecemeal appeals." Id. (quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 438 (1956)).

Here, entry of final judgment under Rule 54(b) against Defaulting Defendants is appropriate. If the District Court enters Plaintiff's proposed order, the claims against Defaulting Defendants will be resolved, and there is no just reason for delay. Plaintiff has already settled with Defendants Glassel and Chemical Free Solutions. This case does not present a danger of piecemeal appeals.

### III. Conclusion

The Court recommends that the District Court grant Plaintiff's motion for default judgment and enter Plaintiff's proposed order. Any party may serve and file specific written objections to this recommendation within fourteen (14) working days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's order.

...

Dated:10/25/13

ELIZABETH D. LAPORTE
United States Magistrate Judge

8